**EXHIBIT "A"**

Stuart R. Fraenkel (State Bar No. 173991)
Nicole Andersen (State Bar No. 281218)
**NELSON & FRAENKEL LLP**
601 S. Figueroa St., Suite 2050
Los Angeles, CA 90017
Tel.: 844-622-6469
Fax: 213-622-6019
Email: stuart@nflawfirm.com
Email: nandersen@nflawfirm.com

Bradley Stoll (*pro hac vice pending*)
**THE LAW FIRM OF KATZMAN, LAMPERT & STOLL**
121 N. Wayne Ave. # 205
Wayne, PA 19087
Tel: (866) 309-6097
Fax: (610) 686-9687
Email: BStoll@klm-law.com

2020 JAN 22 P 1:53

### SUPERIOR COURT OF THE STATE OF CALIFORNIA

### COUNTY OF SAN DIEGO

| | |
|---|---|
| JENNIFER CRETU, as personal representative of the Estate of John Longhurst, deceased, as personal representative of the Estate of Cherril Longhurst, deceased, and on behalf of Jennifer Cretu, Chris Longhurst, and Dana Holve; <br><br> Plaintiff, <br><br> v. <br><br> TEXTRON AVIATION, INC., a corporation; CESSNA AIRCRAFT COMPANY, a corporation; HONEYWELL INTERNATIONAL, INC., a corporation; ALLIEDSIGNAL, INC., a corporation; BENDIX CORPORATION, a corporation; VAN BORTEL AIRCRAFT, INC., a corporation; and DOES 1 through 20, <br><br> Defendants. | CASE NO. **37-2020-00003509-CU-PL-CTL** <br><br> **COMPLAINT FOR DAMAGES:** <br><br> **PRODUCTS LIABILITY; BREACH OF WARRANTY; NEGLIGENCE** <br><br> **AND DEMAND FOR JURY TRIAL** |

COMPLAINT

Plaintiff JENNIFER CRETU, as personal representative of the Estate of John Longhurst, deceased, as personal representative of the Estate of Cherril Longhurst, deceased, and on behalf of Jennifer Cretu, Chris Longhurst, and Dana Holve; by and through her respective attorneys, NELSON & FRAENKEL, LLP and THE LAW FIRM OF KATZMAN, LAMPERT & STOLL, files her Complaint for Wrongful Death and Survival, against Defendants TEXTRON AVIATION, INC., a corporation; CESSNA AIRCRAFT COMPNAY, a corporation; HONEYWELL INTERNATIONAL, INC., a corporation; ALLIEDSIGNAL, INC., a corporation; BENDIX CORPORATION, a corporation; VAN BORTEL AIRCRAFT, INC., a corporation; and DOES 1 through 20. Plaintiff respectfully alleges as follows:

## I. PARTIES

1. Plaintiff JENNIFER CRETU is the personal representative of the Estate of John Charles Longhurst, a California Estate, and the Estate of Cherril Diane Longhurst, a California Estate, duly appointed by the Orange County Superior Court of California ("CRETU").

2. Jennifer Cretu, Chris Longhurst, and Dana Holve ("the Longhurst children") are the surviving natural adult children of John Longhurst, deceased, and Cherril Longhurst, deceased, and are statutory heirs under California Code of Civil Procedure section 377.60 et seq. CRETU brings this action as the personal representative of the Estates of John and Cherril Longhurst, and on behalf of the statutory heirs Jennifer Cretu, Chris Longhurst, and Dana Holve.

3. Plaintiff hereby asserts survival claims pursuant to California Code of Civil Procedure sections 377.10, 377.20 and 377.30 et seq., or any other applicable laws, and claim all allowable survival damages.

4. Plaintiff hereby asserts wrongful death claims on behalf of the Longhurst children pursuant California Code of Civil Procedure section 377.60 et seq., or any other applicable laws, and claim all allowable wrongful death damages.

5. Plaintiff is informed and believes and thereon alleges that, at all times relevant to this Complaint, defendant Textron Aviation Inc. is and was a business entity organized and existing under the laws of the state of Kansas, with a principal place of business located at One Cessna Boulevard, Wichita, Kansas.

6. Plaintiff is informed and believes and thereon alleges that, at all times relevant to this Complaint, defendant Cessna Aircraft Company is and was a business entity existing and organized under the laws of the State of Kansas, with its principal place of business located at One Cessna Boulevard, Wichita, Kansas.

7. Upon information and belief, defendant Textron Aviation Inc. is the successor in interest of defendant Cessna Aircraft Company by reason of merger. Defendant Cessna Aircraft Company is presently the subsidiary and agent of defendant Textron Aviation, Inc., as well as the original designer, manufacturer, and type certificate holder for the subject aircraft involved in the crash pled herein.

8. Defendants Textron Aviation Inc. and Cessna Aircraft Company are referred to herein as the "Cessna Defendants" or "Cessna" depending on context.

9. Plaintiff is informed and believes and thereon alleges that, at all times relevant to this Complaint, defendant Honeywell International, Inc. ("Honeywell") is and was a business entity existing and organized under the laws of the state of Delaware with its manufacturing location for the product at issue in this litigation at 23500 West 105th St., Olathe, KS 66061 and its principal place of business at 101 Columbia road, Morristown, NJ 07960.

10. Plaintiff is informed and believes and thereon alleges that at all times relevant to this Complaint, Defendant Bendix Corporation ("Bendix") is and was a Delaware corporation and maintains its principal place of business at 7575 Baymeadows Way, Jacksonville, FL 32256.

11. Plaintiff is informed and believes and thereon alleges that, at all times relevant to this Complaint, defendant AlliedSignal, Inc. ("AlliedSignal) is and was a Delaware corporation and maintains its principal place of business at 101 Columbia Road, Morristown, NJ 07960.

12. Plaintiff is informed and believes and thereon alleges that Honeywell acquired AlliedSignal d/b/a Bendix King General Avionics Division and King Radio Corporation.

13. Plaintiff is informed and believes and thereon alleges that defendant Honeywell is the successor-in-interest, product line successor, seller, manufacturer, designer, product supporter, distributor, designer, overhauler, repairer of aircraft autopilot systems such as the KAP 140 autopilot and the autopilot systems' components, including the servos, bridal cables,

capstans, computer, and other components thereof. Honeywell provided the subject autopilot parts for incorporation into the subject aircraft involved in the crash pled herein and/or provided aftermarket replacement parts for incorporation into the subject aircraft involved in the crash pled herein.

14. Honeywell, AlliedSignal, and Bendix are collectively referred to as the "Honeywell Defendants."

15. Plaintiff is informed and believes and thereon alleges that, at all times relevant to this Complaint, Defendant Van Bortel Aircraft, Inc. is and was a corporation believed to be organized and existing under the laws of the state of New York with its principal place of business at 4912 S. Collins St. Arlington, TX 76018.

16. Plaintiff is informed and believes and thereon alleges that defendants are authorized to do business, have regularly done business, and are doing business within the State of California, and/or defendants' actions and inactions which are the subject of this complaint took place in California.

17. Plaintiff is ignorant of the true names and capacities, whether individual, corporate, associate or otherwise, of those defendants named as DOES and for that reason have sued these defendants by fictitious names. Plaintiff will seek to amend this Complaint to show their true names and capacities when the same have been ascertained. Plaintiff is informed and believes, and on that basis alleges that each of the defendants designated herein as a DOE was, in some manner, negligent or otherwise responsible for the occurrences and injuries alleged herein.

18. Defendants, and each of them, and DOES 1-20, were the agents, servants, employees, independent contractors, co-conspirators, management companies, subsidiaries, and/or joint venturers, of the remaining defendants, and each of them, and were at all times material hereto, acting within the authorized course, scope, and purpose of said agency, employment or relationship, and/or that all said acts were subsequently performed with knowledge, acquiescence, ratification and consent of the respective principals, and the benefits thereof accepted by said principals.

## II. GENERAL ALLEGATIONS

19. On or about February 6, 2018, John Longhurst was piloting, and Cherril Longhurst was a passenger on a Cessna 182T aircraft, registration number N3525T ("the subject aircraft") which was being operated in the vicinity of San Diego County, California. The subject aircraft was owned by John Longhurst and Cherril Longhurst.

20. On or about February 6, 2018, around 6:45a.m., the subject aircraft departed from Gillespie Field Airport in El Cajon, CA and was destined for Eureka Airport, Eureka, NV. Shortly after takeoff, the subject aircraft turned back towards the airport, departed controlled flight and crashed into a storage facility, destroying the plane and killing John Longhurst and Cherril Longhurst ("the crash").

21. Plaintiff is informed and believes and thereon alleges that, the Cessna Defendants manufactured, designed, sold, tested, and supported the single engine Cessna 182T aircraft product line including the subject aircraft.

22. The Cessna 182T model aircraft includes an autopilot system called the KAP 140 which is installed as original equipment and/or aftermarket equipment in said product line including on the subject aircraft.

23. John and Cherril Longhurst owned the subject aircraft and relied upon the information made available by the Cessna and Honeywell Defendants as means to safely operate the aircraft and its autopilot system.

24. The Cessna Defendants and Honeywell Defendants did not disclose the existence of known design and/or manufacturing defects in the subject aircraft and autopilot system which among other things, will cause flight control systems, including the aircraft's trim system, to deflect at full travel causing the aircraft to be uncontrollable by the pilot.

25. The Cessna Defendants and Honeywell Defendants represented and warranted that the subject aircraft met and complied with controllability, compatibility, time, and strength requirements in the applicable airworthiness standards when in fact, the defendants knew the autopilot did not comply.

26. Defendant Van Bortel performed maintenance and annual inspections on the

aircraft, including its engine and autopilot system and certified that these items were safe for use and airworthy.

27. On February 6, 2018, John and Cherril Longhurst were killed when the subject aircraft crashed near Santee, California due to a defect in the subject aircraft and/or its component parts, including but not limited to the autopilot system and/or the manual electric trim switch system which caused the subject aircraft to become uncontrollable.

## FIRST CAUSE OF ACTION
## STRICT PRODUCTS LIABILITY
## AGAINST THE CESSNA DEFENDANTS, THE HONEYWELL DEFENDANTS, and DOES 1-10

28. Plaintiff incorporates all previous paragraphs of this Complaint as originally alleged herein.

29. Defendants Textron Aviation Inc. and Cessna Aircraft Company (the "Cessna Defendants"), Defendants Honeywell International, Inc., AlliedSignal, Inc., AND Bendix, Inc. (the "Honeywell Defendants"), and DOES 1-10 are in the business of designing, manufacturing, selling, distributing, testing, overhauling, troubleshooting, integrating and/or certifying aircraft and/or their component parts, including autopilots and manual electric trim switch system, and did in fact design, manufacture, sell, distribute, test, overhaul, troubleshoot, and/or certify as airworthy the subject Cessna 182T aircraft, and/or its component parts including but not limited to the subject the manual electric trim switch system, KAP 140 autopilot, autopilot flight computer, autopilot system, and components and parts thereof, as well as associated operation, repair, overhaul, installation and product support materials ("the subject products").

30. Prior to and on February 6, 2018, the subject products were in a condition that was defective, unfit, and unreasonably dangerous for their intended and foreseeable uses, were in a condition that was defective in design and manufacture, and were defective due to inadequate warnings, cautions and instructions concerning their installation and use. The subject products reached the user and consumer of the product(s), without substantial alteration to the condition in which they were sold.

31. The subject products sold by these defendants were in the same or substantially similar condition at the time of the accident as they were designed and manufactured and/or first sold.

32. At all times material herein, the subject products were defective, resulting in an unreasonably dangerous condition which was a proximate cause of the happening of this accident and Plaintiff's Decedents' fatal injuries and Plaintiff's damages.

33. The subject products did not perform as safely as an ordinary consumer would have expected them to perform when operated in an intended or reasonably foreseeable way.

34. As a result of the defective design, manufacture, instructions, drawings and/or warnings of the subject products, Plaintiff's Decedents, John and Cherril Longhurst, were killed and their estate and heirs suffered damages including property damage, personal and emotional distress injury, wrongful death and survival damages; economic and non-economic damages, funeral and burial expenses; property damages; and all other damages allowable by law, in an amount to be determined according to proof at trial.

## SECOND CAUSE OF ACTION
## NEGLIGENCE – PRODUCTS LIABILITY
## AGAINST THE CESSNA DEFENDANTS, THE HONEYWELL DEFENDANTS, and DOES 1-10

35. Plaintiff incorporates all previous paragraphs of this Complaint as originally alleged herein.

36. Defendants Textron Aviation Inc. and Cessna Aircraft Company (the "Cessna Defendants"), Defendants Honeywell International, Inc., AlliedSignal, Inc., AND Bendix, Inc. (the "Honeywell Defendants"), and DOES 1-10 are now, and were at all times material hereto, engaged in the business of designing, manufacturing, inspecting, testing, distributing, licensing, servicing, selling, supplying, supporting, repairing, overhauling, maintaining, and assembling aircraft and/or their component parts including autopilots, and did in fact design, manufacture, inspect, test, distribute, license, service, sell, supply, support, repair, overhaul, maintain, and/or assemble the subject Cessna 182T aircraft and/or its component parts including but not limited to

the subject manual electric trim switch system, KAP 140 autopilot, autopilot flight computer, autopilot system, and components and parts thereof, as well as associated operation, repair, overhaul, installation and product support materials ("the subject products").

37. The Cessna Defendants, the Honeywell Defendants, and DOES 1-10 had a duty to exercise reasonable care in the design, manufacture, assembly, inspection, distribution, licensing, service, sale, supply, support, repair, overhaul, maintenance, and assembly of the subject products, to do so in a reasonable and prudent manner, so as not to allow the products to be unsafe, and had a duty to assure compliance with the appropriate airworthiness standards for their products and in regard to their respective activities relating to the subject products.

38. The Cessna Defendants, the Honeywell Defendants, and DOES 1-10 had a duty of care to warn of any condition regarding the subject products, that could and did render the products unsafe.

39. These defendants, however, were negligent and careless in the discharge of those activities and breached these duties.

40. Prior to and on February 6, 2018, the Cessna Defendants, the Honeywell Defendants, and DOES 1-10 negligently and carelessly designed, manufactured, assembled, inspected, distributed, licensed, serviced, sold, supplied, supported, repaired, overhauled, maintained, and assembled the subject products and created and/or issued inadequate instructions, warnings and cautions on the use of and/or dangers of the subject products.

41. As a proximate result of the acts and omissions of the Cessna Defendants, the Honeywell Defendants, and DOES 1-10, including the negligence described above, the subject aircraft was rendered uncontrollable and crashed, Plaintiff's Decedents, John and Cherril Longhurst were killed, and their estate and heirs suffered damages including property damage, personal and emotional distress injury, wrongful death and survival damages; economic and non-economic damages, funeral and burial expenses; property damages; and all other damages allowable by law, in an amount to be determined according to proof at trial.

///
///

## THIRD CAUSE OF ACTION
## BREACH OF EXPRESS AND IMPLIED WARRANTY
## AGAINST THE CESSNA DEFENDANTS, THE HONEYWELL DEFENDANTS, AND DOES 1-10

42. Plaintiff incorporates all previous paragraphs of this Complaint as originally alleged herein.

43. Defendants Textron Aviation Inc. and Cessna Aircraft Company (the "Cessna Defendants"), Defendants Honeywell International, Inc., AlliedSignal, INC., AND Bendix, Inc. (the "Honeywell Defendants") and DOES 1-10 are now, and were at all times material hereto, engaged in the business of designing, manufacturing, inspecting, testing, distributing, licensing, servicing, selling, supplying, supporting, repairing, overhauling, maintaining, and assembling aircraft and/or their component parts including autopilots, and including the subject Cessna 182T aircraft and/or its component parts including but not limited to the manual electric trim system, subject KAP-140 autopilot, autopilot flight computer, the autopilot system, and components and parts thereof, as well as associated operation, repair, overhaul, installation and product support materials ("the subject products").

44. The Cessna Defendants, the Honeywell Defendants and DOES 1-10 described and advertised their goods for sale, including the subject Cessna 182T aircraft and its component parts, including but not limited to the subject manual electric trim system, KAP-140 autopilot, autopilot flight computer, the autopilot system, and components and parts thereof, as well as associated operation, repair, overhaul, installation and product support materials.

45. These descriptions and affirmations concerning the goods resulted in express warranties that the goods were as described and safe for their intended use.

46. In addition, the Cessna Defendants, the Honeywell Defendants, and DOES 1-10 provided an express warranty including express warranties in the product support literature for the subject Cessna 182T aircraft and its component parts, including but not limited to the subject manual electric trim system, KAP-140 autopilot, autopilot flight computer, the autopilot system,

and components and parts thereof, as well as associated operation, repair, overhaul, installation and product support materials utilized on the accident aircraft.

47. These descriptions, representations, and affirmations resulted in oral and written express and implied warranties which regard the subject Cessna 182T aircraft and its component parts, including but not limited to the subject manual electric trim system, KAP-140 autopilot, autopilot flight computer, the autopilot system, and components and parts thereof, as well as associated operation, repair, overhaul, installation and product support materials utilized in the accident aircraft.

48. The Cessna Defendants, the Honeywell Defendants, and DOES 1-10 expressly and impliedly warranted that the subject Cessna 182T aircraft and its component parts, including but not limited to the subject manual electric trim system, KAP-140 autopilot, autopilot flight computer, the autopilot system, and components and parts thereof, as well as associated operation, repair, overhaul, installation and product support materials would operate safely and were airworthy.

49. These descriptions, affirmations, and express warranties became part of the bases of the bargain of their sales and said warranties ran to Plaintiff's Decedents and Plaintiff.

50. Plaintiff's Decedents further relied upon these warranties in operating and boarding the subject aircraft.

51. As a result of the sales activities, the Cessna Defendants, the Honeywell Defendants, and DOES 1-10 expressly and impliedly warranted their individual goods were merchantable, fit for their ordinary purpose, properly labeled and packaged for sale and installation, airworthy, and conformed to the promises and affirmations of fact made on their containers and labels. These implied warnings ran from Defendants to Plaintiff's Decedents.

52. As a result of the sales activities, the Cessna Defendants, the Honeywell Defendants and DOES 1-10 impliedly warranted that goods were fit for their particular purpose, and that its skill and judgment would be relied upon and were, in fact, relied upon by the purchaser and users of its goods. These implied warranties ran from Defendants to Plaintiff's Decedents.

53. Because the Cessna Defendants, the Honeywell Defendants are merchants as to goods offered for sale, there arises as a result of the "course of dealings" and "usage of trade" an implied warranty that each of their individual goods is safe and airworthy. These implied warranties ran from Defendants to Plaintiff's Decedents.

54. By selling defective goods, the Cessna Defendants, the Honeywell Defendants and DOES 1-10 breached their express warranties and the implied warranties of merchantability, fitness for particular purpose, and airworthiness and the implied warranties arising from the course of dealings and usage of trade.

55. As a direct result of these failures and design defects, the accident aircraft was unreasonably dangerous, defective and caused Plaintiff and Plaintiff's Decedents' injuries, deaths, and damages.

56. As a result of these failures, Plaintiff's Decedents, John and Cherril Longhurst, were killed and their estate and heirs suffered damages including property damage, personal and emotional distress injury, wrongful death and survival damages; economic and non-economic damages, funeral and burial expenses; property damages; and all other damages allowable by law, in an amount to be determined according to proof at trial.

### FOURTH CAUSE OF ACTION

### NEGLIGENCE

### AGAINST VAN BORTEL AIRCRAFT INC. and DOES 11-20

57. Plaintiff incorporates all previous paragraphs of this Complaint as originally alleged herein.

58. Defendant Van Bortel Aircraft Inc. and DOES 11-20 ("Van Bortel"), as a product supporter, maintainer, overhauler, and/or distributor of Cessna 182 aircraft and Honeywell KAP 140 autopilots, defendant Van Bortel had duties imposed upon it by the common law and regulatory law and was required to carry these duties out professionally, prudently, and in a manner that would not cause a dangerous product to enter or remain in the marketplace.

59. Van Bortel breached the duties that it owed to Plaintiff and Plaintiff's decedents and was negligent, grossly negligent, careless, and reckless by virtue of the following:

a. failing to perform proper inspection, maintenance, preventative maintenance, troubleshooting, and evaluation of the accident aircraft's KAP 140 autopilot system, the autopilot computer, autopilot components including but not limited to the servos, capstans, bridal cables, strain gauges, relays, gears, slip clutches, and other components.

b. failing to perform proper inspection, maintenance, preventative maintenance, troubleshooting, and evaluation of the accident aircraft's manual electric trim system, static system, altimeter, vertical speed indicator, flight instruments, and other components.

c. certifying the accident aircraft to be airworthy when it was not safe for flight.

d. failing to follow the required service instructions, maintenance instructions, or other matters governing the appropriate inspection, maintenance, and evaluation of the subject aircraft and its components.

e. failing to perform proper inspection, maintenance, preventative maintenance, troubleshooting, and evaluation of the accident aircraft's engine.

f. failing to maintain the subject aircraft and its components in an airworthy manner.

60. The negligence of Van Bortel was a proximate cause in the happening of the crash, Plaintiff's Decedents' deaths, and Plaintiff's resulting damages.

61. The negligence of Van Bortel caused or substantially contributed to the crash in that the aircraft's autopilot system failed and caused the airplane to crash, fatally injuring Plaintiff's Decedents.

62. As a result of the acts and omissions of Van Bortel, Plaintiff's Decedents, John and Cherril Longhurst, were killed and their estate and heirs suffered damages including property damage, personal and emotional distress injury, wrongful death and survival damages; economic and non-economic damages, funeral and burial expenses; property damages; and all other damages allowable by law, in an amount to be determined according to proof at trial.

///

///

## FIFTH CAUSE OF ACTION

## BREACH OF EXPRESS AND IMPLIED WARRANTY

## AGAINST VAN BORTEL AND DOES 11-20

63. Plaintiff incorporates all previous paragraphs of this Complaint as originally alleged herein.

64. Defendant Van Bortel and DOES 11-20 ("Van Bortel") is in the business of being a seller, product supporter, maintainer, overhauler, and/or distributor of aircraft, and/or services associated with the continuing airworthiness of these products.

65. Defendant Van Bortel described and advertised its goods and services for sale.

66. These descriptions and affirmations concerning the goods and services resulted in express and implied warranties that the goods were airworthy, merchantable, fit for their purpose, and safe for their intended use.

67. Plaintiff's Decedents were members of the class of persons to whom these warranties were intended to benefit and protect and these warranties ran to them directly and/or as third-party beneficiaries.

68. Plaintiff's Decedents further relied upon these warranties in boarding the accident aircraft.

69. As a result of the sales activities, the Defendant Van Bortel impliedly warranted that its services, skill and judgment could be relied upon and were, in fact, relied upon by the purchasers of their individual services and ran from Defendant to Plaintiff's Decedents.

70. Because the Defendant Van Bortel is a merchant as to their goods and services offered for sale, there arises as a result of the "course of dealings" and "usage of trade" an implied warranty that each of their individual goods and services are safe. These implied warranties ran to Plaintiff's Decedents.

71. The breaches of warranties included the following:

    a. failing to perform proper inspection, maintenance, preventative maintenance, troubleshooting, and evaluation of the accident aircraft's KAP 140 autopilot system, the autopilot computer, autopilot components including but not limited to

the servos, capstans, bridal cables, strain gauges, relays, gears, slip clutches, and other components.

b. failing to perform proper inspection, maintenance, preventative maintenance, troubleshooting, and evaluation of the accident aircraft's manual electric trim system, static system, altimeter, vertical speed indicator, flight instruments, and other components.

c. certifying the accident aircraft to be airworthy when it was not safe for flight.

d. failing to follow the required service instructions, maintenance instructions, or other matters governing the appropriate inspection, maintenance, and evaluation of the subject aircraft and its components.

e. failing to perform proper inspection, maintenance, preventative maintenance, troubleshooting, and evaluation of the accident aircraft's engine.

f. failing to maintain the subject aircraft and its components in an airworthy manner.

72. Van Bortel's conduct with respect to the foregoing breaches fell below the applicable standard of care and constituted breaches of implied and express warranties.

73. As a direct result of these failures, the subject aircraft and its component parts were unreasonably dangerous, defective, unairworthy, and caused Plaintiff and Plaintiff's Decedents' injuries, deaths, and damages.

74. As a result of these failures, Plaintiff's Decedents, John and Cherril Longhurst, were killed and their estate and heirs suffered damages including property damage, personal and emotional distress injury, wrongful death and survival damages; economic and non-economic damages, funeral and burial expenses; property damages; and all other damages allowable by law, in an amount to be determined according to proof at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, as follows:

1. For economic and noneconomic damages according to proof;
2. For property damages according to proof;

3. For prejudgment interest as allowed by law;

4. For costs of suit incurred herein; and

5. For such other and further relief as the Court may deem proper.

Date: January 22, 2020

NELSON & FRAENKEL, LLP
THE LAW FIRM OF KATZMAN,
LAMPERT & STOLL

By _____
Stuart R. Fraenkel
Nicole C. Andersen
Bradley Stoll (PHV)
*Attorneys for Plaintiff*

## JURY TRIAL DEMAND/REQUEST

Plaintiff hereby requests and demands a trial by jury on all claims so triable.

Date: January 22, 2020

NELSON & FRAENKEL, LLP
THE LAW FIRM OF KATZMAN,
LAMPERT & STOLL

By _____
Stuart R. Fraenkel
Nicole C. Andersen
Bradley Stoll (PHV)
*Attorneys for Plaintiff*